For the appellate, do we have Ms. Werthmann? Yes, Your Honor. Great, we can hear you clearly. And let me just make sure we have for the appellee as well, Ms. Costin, can you hear us? Yes, Your Honor. Excellent. So, Ms. Werthmann, I think you have reserved two minutes for rebuttal. So, why don't we hear from you? Thank you, Your Honor. Good morning. May it please the Court, my name is Katha Werthmann. I am counsel for appellants Inez Gonzales de Fuente and the Cobrans. They are home health aides working on Medicaid cases in New York. The only issue in this ERISA self-dealing case is whether the aides have Article 3 standing to challenge the unlawfulness of a captive insurance scheme, through which the aides' employers, who are also benefit plan fiduciaries, are taking money owed to the aides and effectively putting it back in the defendant's own pockets. About $22 million worth of money between 2015 and 2017, the last time we updated the pleadings. That's over $5 million worth of home care worker wages at $4.09 an hour of the benefit portion under the New York wage parity law. The answer to the question of whether the aides have standing at this stage is yes, for two main reasons. First, the aides have pleaded a classic financial injury under Article 3, loss compensation. Second, they stand to recover that compensation if they prevail, through the remedy of surcharge, which is available under the Supreme Court decision of Cigna v. Amara and the cases that follow it, including Second Circuit cases. These points make this case fundamentally unlike Foale v. U.S. Bank, the case the district court relied on here to find a lack of standing, as I'll explain now in more detail. First, the aides have pleaded a direct financial injury arising from the ERISA violations at issue. For context, the aides do the hard and essential work of caring for the elderly and disabled Medicaid recipients every day. For this essential work, they earn the minimum wage. In addition, the New York wage parity law requires that they be paid $4.09 an hour through wages, benefits, or a combination of the two, which they have been cheated out of here. Their employer has feigned compliance with this requirement by setting up a largely illusory benefits plan. But isn't your problem with the New York law under Foale? I'm not very sympathetic to Foale, I must say, because I think that one could claim that even, you know, what is fully funded, what is not. But in fact, if we decided for you, you would still be in the same situation, except for any claims that you might have under the New York law, given that Foale says that we can't really look to a degree of funding where there is adequate funding, more or less, to begin with. So aren't we stuck? We see our case as very different than Foale, Your Honor. First, the court has discretion to award remedies for the ERISA violation that includes surcharge, and surcharge is payable directly to the aides under Cigna v. Amara. Second, Foale did not have a prevailing wage law issue, and it's routine in federal court cases. I know there are differences, but in terms of what we can do for you, at the end of the day, we may be able to say that they did things wrong, but we can't order them to pay you more. The fact that the prime that you have gives you inadequate benefits, which I think is fairly clear, remains that way. That money, I don't see how, given Foale, we can order the money to you. Well, respectfully, Your Honor, Foale doesn't change Cigna v. Amara, and Cigna v. Amara says very directly that as a remedy for a breach of fiduciary duty, which we have here, money can be paid directly to the plan participants as a form of restitution for that breach. I guess my question here, it's coming back to what Judge Calabresi said. If you had no wage parity claim, and I get that you have a wage parity claim, but if you did not, and we, I think, have to assume you do not, because we're only asking whether you have standing under ERISA, putting wage parity out of the picture, how do you have a claim of fiduciary, a breach of fiduciary duty here? We do have a breach of fiduciary duty regardless of the wage parity claim. First, even if we did not bring a claim, of course, the wage parity law would operate, just like state property law would always operate to help determine whether someone had rights at issue and an injury in fact. And second, we would still have money. So, the fact that you may have an injury in fact under the wage parity law, and I understand that very clearly how you would have that, but how does that transport over to a completely different cause of action? What is your injury in fact for ERISA purposes when you take wage parity out of the picture? Yes, as I've said, we believe wage parity belongs in the picture, but if you take it out of the picture, then in that event, there still is an injury in fact, and that injury in fact is that the fiduciaries here and the parties in interest are misusing employee benefit plan assets that are pledged for the exclusive use of the plan participants. So, I see that I'm at time if I want to use two minutes for rebuttal. No, no, we've already deducted the two minutes. You still have 150 in the initial part. Okay, thank you. Yes, and I also want to say another major difference. I think Judge Katzmann is trying to ask a question, but I think Judge Katzmann, could you unmute yourself? We'll give you a little more time, don't worry. Thank you. Yeah, it would be a good idea if I unmuted myself. I wanted, counsel, for you to address the question of unjust enrichment, because you also claim an injury in fact under ERISA, under the theory of unjust enrichment. And I'm somewhat unclear that the district court judge in footnote four says that you did not make a claim for unjust enrichment under ERISA. If I understand her footnote correctly, she seems to be saying that your claim for unjust enrichment is under the wage parity law. But when I look at the complaint, the fourth claim of relief, I think that is where you're making the unjust enrichment under the ERISA statute. Is that correct? Is that your position? Yes, we are making it under the fourth relief and also under the second and third claims for relief, which are prohibited transaction claims, very similar to the breach of fiduciary duty argument, Your Honor. So thank you. And that is what leads directly to the injury, in fact, under ERISA, which is that employee benefit and assets. May I conclude? Oh, please go ahead. We take another minute. OK, thank you. Employee benefit plan assets are being used for the profit benefit plan fiduciaries and employers. And that is a remedy that is compensable under AMARA. And was that ERISA monies that are being used for the benefit improperly for unjust enrichment or wage parity? It's ERISA monies. They are money that is from its money that is being paid from the trust. The employers take money and they put it into the employee benefit plan trust. And then from that trust, they take it and put it into the captive insurer. And those captive insurance cells are owned and controlled by the defendants. And they are owned and controlled for the defendant. The defendants stand to profit from those investments. Another another injury, in fact, I would like to quickly mention as well, is that the employees are effectively paying more in premiums than they were, than than they would if there was no prohibited transaction or breach of fiduciary duty here. So that's also another way in which this case is different than FOAL. FOAL, the employees were the retirees were receiving a certain amount of money that was promised to them. Here, there's an allegation that the benefits that are being provided are not worth the 409 an hour and would be lower. And the employees are contributing to their own health benefits through copays, insurance, deductibles, all of which they would say would be lower if there was no prohibited transaction or ERISA violation here. But how how would they be lower if we from our order? Why would any order of ours under ERISA cause them to diminish those payments that you would do as against using the monies in other ways? Because the order would be that the employers would have to stop their self-dealing. And in that event, the money wouldn't be diverted from providing benefits to the employees. Instead, it would go to the employees. Well, how do we know it would go to the employees or wouldn't just be an overfunded plan? The reason it wouldn't just be an overfunded plan. And the reason and the court is not required to close its eyes to the real world surroundings of the injury, in fact. So under wage parity, the employers are required to provide wages, benefits or a combination of the two. It would be a violation. But why? But why if the plan is overfunded? Which if we decided for you, instead of doing what they are doing, they would put more and more money into this plan. Now, that makes it less likely to go bluey, which was my problem with soul, because I think any thing that makes a plan less likely to go bluey is an interest. But it's all decided that that was not. So if they do that again, I'm kind of I don't understand how you are any better off. The plan is better funded. But but Paul tells us that that doesn't matter. The employers cannot keep overfunding the plan when it's already funded at the level of essentially three or four years of benefit. Why? I mean, why under Arisa? Can they not do that? It may be that all that, again, is a problem of wage with the New York law. But why is that an Arisa problem? They can't overfund a plan. The reason there is a case under Arisa, which says you've overfunded the plan. This is a case very similar to cases where employers or insurance companies take premiums and then in turn provide illusory benefits, putting those premiums into the pockets. And I suppose you could say that is overfunding plan, but they're not providing the benefits that they are required to provide. At a certain point on Arisa, it's it's no longer possible to keep overfunding and take a credit for it. So it's an Arisa plan. And again, wage parity here. The money would not be credited under wage parity. They simply would not be able to say we're providing for a nine an hour because they wouldn't be providing any additional money or benefits to the participants. There's the benefits that are being provided are simply not worth for a nine an hour. But first and foremost, that the remedy here would put money back in the AIDS pockets because it would compensate them for the unjust enrichment that they are experiencing. I'm sorry, just go ahead. As a council, as you noted at the outset of your argument, the issue here, as I understand it, is constitutional standing. It is not whether the the plaintiffs have, you know, survived a motion to dismiss under a complaint. We're not in that zone. We are in the standing zone. Is that correct? Yes, so that now you may. It is possible that you may have constitutional standing. But ultimately lose. But that in terms of the merits of the case. But that is not really before us. Is that your understanding? The merits of the case? Yes, the merits are not before this time. And we are here on an article three injury. In fact, not a statutory standing question. Why don't we why don't we move to opposing counsel? You have reserved two minutes. And I know we've gone over a little bit. So, Miss Costin, we'll give you a couple extra minutes. We may have some questions that run over for you as well. So, Miss Costin. Thank you, Your Honor. Good morning, everyone. May it please the court. My name is Emily Costin, and I represent the defendant appellees in this case. The employer defendants, Edison Home Health Care, preferred home care and the individual fiduciary trustee defendants. Your honors, as your initial questioning made clear to me, you understand that this appeal involves a straightforward question of constitutional standing and injury. That is necessary to assert an ERISA claim now under the Supreme Court's decision in full. And it does not need to be made any more complicated than necessary just because these same individuals also happen to assert a wage parity act claim. The ERISA claim at its core is one in which plan participants are alleging they're challenging the fiduciary's use of a captive insurance company as the mechanism to ensure the risk of the health plans exposure. And it's the transfer of the money, the transaction of the money from the trust to the captive insurance company through premiums to ensure that risk. They claim that this was a mismanagement of trust assets, and they claim it was imprudent. But the simple question under full is this. Did these plan participants lose any benefits they were entitled to under the plan as a result of this transaction? Or did that transaction put any of those benefits at risk? And the answer to that simple question under full is no, they did not lose any benefits. They have not alleged that they lost any benefits, and they have not alleged that any of their benefits were put at risk. And quite frankly, that would be counterintuitive because the monies were being used to pay premiums to an insurance company to ensure against the risk. Their theory, as my opposing counsel made clear in her argument, is heavily dependent on confusing and conflating their injury under ERISA with their potential insurance. Counsel, isn't somebody always better off if a plan that is due to pay them is overfunded? I mean, wouldn't you be happier if somebody owed you some money and you knew that instead of being worth $1 million, you were worth $2 million? I understand, Your Honor. Isn't that something that would make you better off? Not in this case as it relates to the ERISA claim, Your Honor. Why isn't the issue here simply whether if they did things correctly as appellant claims that the benefits which they are getting, not that they would get more benefits, but that the benefits that they are getting would be more secure? Well, first of all, Your Honor, there is no allegation at all that the benefits right now are not secure. Look, the question is whether they have constitutional standing and they claim they have constitutional standing because they have been hurt. You don't have to allege why something hurts you or not to have constitutional standing. That goes to the merits. The question in constitutional standing is do you have an interest? And the suggestion I'm making is that anyone has an interest in having potential debtors of theirs be better off. Your Honor, under ERISA, these plan participants are only entitled to receive the medical benefits that are outlined in the plan. That is correct, and you're not answering my question. They are more likely to get those benefits if the plan is overfunded. That's not true. The plan is more than funded, and there has never been any allegation here that they have not received the benefits that they are owed or that there is any risk. And quite frankly, even if there were an allegation of some future potential risk, that would be purely speculative, and it would not meet the constitutional requirement that the injury be concrete and particularized. I think your better argument is not that that's a bad argument, but that the Supreme Court rejected it in Seoul. The Supreme Court rejected the notion that a statutory violation, as my opposing counsel has been arguing, there is an allegation under ERISA that there has been a breach of fiduciary duty and that there has been a statutory violation of ERISA. But that has been squarely rejected under Seoul and under Tokyo as sufficient to suffice for constitutional standing. These participants, in order to assert an ERISA claim, must articulate an injury in fact that derives from the fiduciary conduct that is caused by the fiduciary conduct that they have alleged is at issue. So, counsel, can I ask you a hypothetical, which is not this case. But let's assume, for the sake of argument, that you had a complaint that the ERISA plan managers, the fiduciaries here, were dipping into the plan funds and going to Aruba every weekend on a private jet. And they would be sipping drinks with little umbrellas in them every week, just drinking up literally the plan proceeds. But that the complaint also alleged that the plan was wildly overfunded anyway. Would they have a claim under your view, or for a breach of fiduciary duty, or is your view that as long as it's overfunded, they could breach to their heart's content and they can be as unfiduciary as they like, as long as the plan is delivering what it promised. And there's enough money to deliver what was promised. That is the law as it exists now under Thole and under Skokie. It has held since central states and Kindle. That if there is an allegation of fiduciary misconduct, that is an allegation that cannot survive this Article III inquiry unless there is a concrete and particularized injury derived from it. And I understand that that hypothetical suggests that the fiduciaries are bad actors and there's this concern of no redress. There are other avenues for that. The Department of Labor can enforce that. That does not confer standing on every plan participant to make an ERISA claim. You are saying that parties to an ERISA plan have no standing to ensure that their fiduciaries are behaving in a fiduciary fashion unless their misbehavior from a fiduciary point of view causes them an immediate financial harm. Not just an immediate financial harm, Your Honor, but some harm, some articulated injury, a lack of benefits, a concrete risk that they're not going to receive those benefits in the future. There are many different scenarios under ERISA where individuals' account balances have been affected by fiduciary misconduct. But none of that is at issue here when we are talking about a defined benefit plan, a health plan, albeit. But this falls squarely into the analysis of Thole, quite frankly. Now, appellants argue that if a lack of fiduciary behavior is asserted and wins, that they will be in a stronger position in their bargaining for the plan. But that is a different thing from Thole because in Thole they weren't employees. What is your answer to that? I'm not sure I follow that question. Well, appellants argue that in their negotiations for their plans, for their ERISA plan, they would be strengthened if there were a finding that the fiduciaries were behaving in a non-fiduciary way. And that in Thole, the ERISA beneficiaries were not employees, so that this possibility of negotiation being strengthened was not there. Well, first of all, if I'm following your question about negotiation, there are no negotiations here over what they're entitled to under an ERISA plan. Under ERISA, the ERISA plan sponsors can choose to offer whatever benefits they choose to offer. And the answer to that question is that the employees here and their rights under the Wage Parity Act are completely distinct and completely attenuated from what the plan sponsors decide to offer under an ERISA plan. And that goes directly to this court's holding in Concerned Home Care. And in the Concerned Home Care case, that case really articulates very well the distinction between the Wage Parity Act and the ERISA claims and the ERISA obligations and how an ERISA plan sponsor has no obligation to design the benefits in any particular way just because of the Wage Parity Act. Counsel, to return to the question of constitutional standing and also to follow up on Judge Calabrese's question, if you look at who funded in Thole the retirement plan, it was the employer. Here, the plan is funded by the employees. That's not correct. That's not correct, Your Honor. My opposing counsel has made the comment that it is funded by the employees. It's not correct. There are no contributions made to this plan by the employees. The only out-of-pocket costs for these employees are the typical out-of-pocket costs in a health plan, a copay at the doctor, that sort of thing. The money that is used to fund this plan is not being taken from the employees' pockets. It is coming solely from the employers. This is the fringe benefits that they're mandated by law to pay their employees? Correct. Okay. Thank you. It is a mix of benefits, Your Honor. The $4.09 an hour that must be paid under the Wage Parity Act, it's a combination of benefits. And in this situation, my clients offer a combination of health benefits and transit benefits and some other things. So, again, that goes to the Wage Parity Act and whether or not these employers are offering. If the value of the health benefits that they are offering is sufficient to meet that threshold, is a wage parity claim, and that is between the employees and their employers. It is not between the participants in an ERISA plan and the fiduciaries. Can I ask you about unjust enrichment as I ask your opposing counsel? If reading the complaint liberally account for claim for relief in the complaint, as alleging unjust enrichment, is it your position that plaintiffs would still lack an injury for constitutional standing for purposes of Thole? And relatedly, does Thole override CIGNA? So let me take the first question first. My opposing counsel has spoken a lot and the reply brief is very heavily dedicated to the notion of remedies that might be available. And quite frankly, that puts the cart before the horse. Under Thole, these participants must have a predicate injury before we can even get to the conversation about remedies and whether or not there would be anything that would flow to them. Under Thole, the court did not get into any conversation about remedies. If it had, it would have gone into a discussion about CIGNA-VMARA and whether or not it could reform the plan to help these participants or whether or not it could award some kind of surcharge to these participants. But the Supreme Court never got into that analysis, Your Honor, because these participants in Thole did not have a predicate injury to be in federal court to even get to that conversation about remedies. And here there has been a significant amount dedicated to this conversation about whether unjust enrichment or whether there are some other remedies that could be awarded. There must be a predicate injury before we get to that conversation. And without that, it would read standing out of the equation entirely. If there are no other questions from my fellow panel members, why don't we turn back to the appellant? And Ms. Werthmann, you have reserved two minutes for rebuttal. Thank you, Your Honors. We've covered in this conversation a number of ways in which this case is unlike Thole, where the aides here have a direct and concrete injury. Among other things, the aides have pleaded unjust enrichment and unjust enrichment is a form of injury. And that's an injury that's compensable under Amara. The unjust enrichment arises because benefit plan assets are being used for the benefit of the employer. My opposing counsel, an insurance company, that insurance company is a captive insurance company, the cells of which are owned and controlled by the defendants here. That's money going back to the defendant. Why isn't that exactly like Judge Nardini's example of a separate accident? That is, these people are unjustly enriching themselves, and that is indeed something that your clients may have some claim against. But why is that linked to the harm in their ERISA benefits? The reason goes back to the fact that these employee benefit assets are a form of compensation that is provided to the employees. To go back to Judge Katzmann's question, this money is being credited as wages that are being provided to them. It's not a simply it's not a it's not an ERISA plan. But that's because of a New York wage parity law. It makes it coming back. Go ahead. I'm sorry. I'm sorry, Your Honor. It makes it makes this case more like the defined contribution plans. There's been a number of cases since the wall that have held that defined contribution plans. Participants still have constitutional standing where their contributions are not properly valued and harmed through a breach of fiduciary duty. Would you respond to the hypothetical I pose to opposing counsel, which is the Aruba one? In your view, I think it was opposing counsel. I'm losing track of who I asked this question. Forgive me if I already asked it to you. In your view, if the fiduciaries were jetting off to the Caribbean and drinking up lots of the excess overfunding and little fruity drinks, would that, in your view, give you an unjust enrichment claim? And assume in my hypothetical that the plan remains overfunded and that everybody is getting everything that they were promised. If that is a defined benefit pension plan like the situation in Seoul, then I am very disappointed to say that I believe that the participants would likely not have constitutional standing. This case is different because we're talking about a health benefits plan. We're talking about current employees rather than retirees who are not receiving the full value of the benefits that they were promised. And because of the operation of the wage parity law that gives them an equitable stake in those plan assets. So am I understanding you? Let me say this a little differently. We've been talking about whether your injury is dependent on the wage parity law. But are you arguing that even if you put aside the wage parity law, because there is an obligation to kick in $4.09 overall to these various benefit plans in the aggregate, the value of $4.09. You're saying that if they are more likely, in that case, analogized to defined contribution plans. And therefore, you're not getting your defined contribution out of it. And therefore, you're not undersold. Am I saying that right? With the wage parity law, Your Honor, it is more like a defined contribution plan. Because this money is the workers' compensation that is being taken directly from them, credited against them, and then put back in the employers' pockets. In the situation where we don't have the wage parity law, imagine a world in which there is no specific right to $4.09 an hour, although that exists here. Then there is still a constitutional injury here for the current employees. And we've cited a number of cases in our brief where courts have recognized that can give rise to an injury because compensation is one part of a whole package. And a case that's really directly on point that we've cited regarding that is Muckle, where the co-pays, deductibles, and contributions that were paid formed part of Article III standing. And one of the factors the court looked to was that it was part of an entire compensation package that was harming the employee. What is, in your view, what does Stoll tell us about the viability of an unjust enrichment claim? Does it still survive in the risk of jurisprudence? And how does that relate to the Cigna case? I don't see any part of Stoll that undermines the unjust enrichment case based on Cigna versus Amara. All right. I think we have your arguments. Thank you both very much. It was very well argued on both sides, and we're very grateful for everything today.